Filed 1/29/26  P. v. Adams CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B340879 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA103213) |
| v. | |
| DAVID ANTHONY ADAMS, JR., | |
| Defendant and Appellant. | |

Appeal from judgment of the Superior Court of Los Angeles County, Douglas W. Sortino, Judge.  Affirmed.

Jennifer Peabody and Richard B. Lennon, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Wyatt E. Bloomfield and Chelsea Zaragoza, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Appellant David Anthony Adams, Jr.—whom a jury convicted of second degree murder in 2015—challenges the trial court's refusal to strike his prior "strike" conviction at his Penal Code[1] section 1172.75 resentencing. Adams contends his background and the circumstances of the murder demonstrate that he falls outside the spirit of the "Three Strikes" sentencing scheme (§§ 667, subds. (b)–(j), 1170.12).

We conclude, however, that Adams's challenge amounts to a request that we "substitute [our] judgment about appropriate sentencing for that of the trial court," which we cannot do. (*People v. Dain* (2025) 18 Cal.5th 246, 258.) We therefore reject his challenge and affirm.

### FACTUAL SUMMARY AND PROCEDURAL HISTORY

We summarize only the facts and procedural history relevant to our resolution of this appeal.

### A.    The Murder and Adams's Original Sentencing

For context, we provide the following account of the murder derived from our opinion in Adams's direct appeal. (*People v. Adams et al.* (Aug. 8, 2017, B269551) [nonpub. opn.] (*Adams*).)

Adams and his codefendant, Nicholas Hempstead, were both members of Trey-57, a street gang affiliated with the Crips. The victim, Deon Davis, was a member of the PDL gang, which was affiliated with the Bloods and an enemy of Trey-57. On August 31, 2013, Lisa Caesar, an associate of the Trey-57s, told Adams and his friends that Davis had forced her niece into prostitution and had taken her niece's car. Caesar, Adams, Hempstead, and another friend, Lonzo Eddings, confronted Davis at a residence and

---

[1] Further statutory references are to the Penal Code.

attempted to retrieve the car. They argued, and Adams punched Davis.

The owner of the residence where the fight took place objected, and Adams suggested they go to another location. Davis willingly accompanied the group to a location in territory controlled by Trey-57. Davis challenged the others to a fight, Adams accepted, and they carried the fight into an alley.

"Caesar testified that, when the youths stopped in the alley, they conversed in tones so low that Caesar could not hear them. Eddings came out of the alley and told her, ' " . . . [Hempstead] is going to shoot him." ' Caesar told Eddings, ' "I didn't come here for that" ' and 'tell him no.' Eddings returned to the alley, and, in a few seconds, Caesar heard Hempstead say, ' "Fuck that. I got him right here." ' Caesar saw that Hempstead was wearing gloves and had a black object that was the size of a handgun. Hempstead shoved Adams aside and walked toward Davis, who was deeper into the alley." (*Adams*, *supra*, B269551.)

"Adams walked up to [Caesar and Eddings] and said, ' "Start running to the car." ' " As Caesar and Eddings did so, they heard multiple gunshots. Caesar got into her car and " 'never looked back.' " " 'Within seconds' Eddings got into the car; then Adams arrived five seconds after Caesar. Caesar did not intend to wait for Adams or Hempstead. After Caesar started the car, but before she could put the car in gear, Hempstead got into the car. . . . [¶] . . . As they were driving away, Eddings looked at Hempstead and said, 'What the fuck did you do?' Hempstead answered, ' "That was for [Cook, Eddings's brother, who had died in a possibly gang-related shooting]." ' Adams and Hempstead laughed and made Crips hand signals." (*Adams*, *supra*, B269551.)

In 2015, a jury convicted Hempstead of first degree murder (§§ 187, subd. (a), 189), and found true a gang allegation (§ 186.22,

subd. (b)(4)) and that Hempstead had personally and intentionally discharged a firearm proximately causing death (§ 12022.53, subd. (d)). (*Adams*, *supra*, B269551.) The same jury convicted Adams of second degree murder (§§ 187, subd. (a), 189) and found true a gang allegation (§ 186.22, subd. (b)(4)).

At sentencing, the prosecution requested that the court sentence Adams to 36 years to life in prison. The prosecutor argued that Adams's "long criminal history[,] beginning when he was 14 years old," supported the request: In 2006, Adams suffered a conviction for grand theft and "was given the benefit of the deferred entry of judgment program." Then, in September 2007, Adams sustained two convictions for burglaries of Target stores, and in November 2007, he suffered a robbery conviction—a strike under the Three Strikes law—after he physically struggled with a security guard while attempting to burglarize a Target store.[2] In 2010, while on parole for the 2007 robbery, Adams committed another burglary and served 32 months in state prison. And in 2013, while still on parole for the 2010 burglary, Adams aided and abetted the instant murder.

The trial court denied Adams's request, pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*), to strike his prior strike conviction and sentenced Adams to 36 years to life in prison. The sentence consisted of a 15-year-to-life base term, doubled due to Adams's prior strike, a five-year prior serious felony conviction enhancement (§ 667, subd. (a)(1)), and a one-year prior

---

[2] The copy of the probation report included in our appellate record does not reflect any 2006 proceedings for grand theft against Adams, nor does the report describe the 2007 crimes as involving Target stores. Adams, however, does not dispute the prosecution's characterization of his criminal history.

4

prison term enhancement (§ 667.5, subd. (b)).  On appeal, we affirmed the judgment.  (See *Adams*, *supra*, B269551.)

### B.    Section 1172.75 Resentencing Proceedings

Several years after Adams's conviction, the Legislature enacted Senate Bill No. 136 (2019-2020 Reg. Sess.), which amended section 667.5, subdivision (b) to eliminate sentence enhancements for prior prison terms unless the prior terms were for sexually violent offenses.  (Stats. 2019, ch. 590, § 1.)  Then, via Senate Bill No. 483 (2021–2022 Reg. Sess.), the Legislature enacted section 1172.75 to provide a resentencing procedure that extends the prohibition on certain prior prison term enhancements to all persons currently incarcerated in jail or prison.  (Stats. 2021, ch. 728, § 3.)  Section 1172.75 requires a "full resentencing" of any defendant serving a term on a judgment that includes a qualifying enhancement.  (*People v. Rogers* (2025) 108 Cal.App.5th 340, 358; see § 1172.75, subd. (c); *People v. Superior Court* (*Guevara*) (2025) 18 Cal.5th 838, 875.)

In 2023, the court set Adams's case for a section 1172.75 resentencing and appointed the public defender to represent him in the proceedings.  Prior to the resentencing hearing, defense counsel filed a motion requesting that—in addition to striking the invalidated prior prison term enhancement—the court strike the five-year prior serious felony enhancement and Adams's prior strike conviction for robbery.  In the motion, defense counsel argued that Adams fell outside the spirit of the Three Strikes law because he was only 21 years old when he committed the offense, and his current age (32 years old) rendered him a low recidivism risk.  Adams did not present any other mitigating evidence.

At the September 2024 resentencing hearing, defense counsel reiterated the requests in the motion and made the additional

request that the court resentence Adams to the lesser offense of manslaughter. In support of the requests, defense counsel proffered the following facts concerning the circumstances of the murder and Adams's background and postconviction conduct: Adams was "under the influence" when he aided and abetted the murder. He grew up surrounded by gangs, drugs, and violence, and "was shot twice at the age of 12 in the leg and 14 in the back while walking to school." Adams's father, who physically abused him, suffered a brain aneurysm when Adams was 11 years old and died shortly before Adams committed the murder. Adams suffered a stab wound during a 2019 prison riot that left him with severe mobility challenges and memory loss. And while in prison, Adams had been working and "engaging, to some extent, in programming"—namely, a 2019 program concerning the "green environment" and a May 2024 "self-awareness and improvement group."

Finally, defense counsel noted that, although Adams would be eligible for a youthful offender parole hearing in 2038, "only 17 percent of inmates who come before the parole board are granted parole each year[,] and that's been a consistent statistic for the last several years."

The court responded that, in its view, the parole board's standards were "lax," and the board "seem[ed] to be releasing everybody they c[ould]." The court then asked whether the record contained any evidence supporting the facts proffered concerning Adams's background and the circumstances of the offense. Defense counsel responded, "This is Mr. Adams['s] reporting." The court likewise asked for more details concerning Adams's involvement in the prison riot, but apart from "know[ing] that [Adams] received [a rule violation report] for participating in the riot," defense counsel "[did not] have the answer to the court's question."

6

After hearing argument from the prosecutor, the court struck the one-year and five-year enhancements, but declined to strike Adams's prior strike or make further reductions to his sentence. The court explained, in pertinent part:

"I don't believe the strike should be stricken. I believe [Adams] is still within . . . the spirit of the Three Strikes law . . . . [N]or will I take the opportunity to exercise my discretion to reduce this to voluntary manslaughter. [¶] . . . [T]his was a gang murder, pure and simple, . . . [Adams] knew what was going to happen, . . . was happy after it happened, he ha[s] a lengthy criminal history, he had plenty of time to turn his life around and do the right thing and he chose to continue in this behavior."

The court sentenced Adams to an aggregate term of 30 years to life in prison. Adams timely appealed.

## DISCUSSION

Adams contends the trial court abused its discretion by refusing to strike his prior strike conviction. (*People v. Carmony* (2004) 33 Cal.4th 367, 375 (*Carmony*) [appellate court reviews a trial court's refusal to strike a prior strike conviction for abuse of discretion].) We are not persuaded.

The abuse of discretion standard is highly deferential. (*People v. Mendoza* (2023) 88 Cal.App.5th 287, 298.) A defendant bears the burden of demonstrating " ' "the sentencing decision was irrational or arbitrary." ' " (*Carmony*, *supra*, 33 Cal.4th at p. 376.) "[A] ' "decision will not be reversed merely because reasonable people might disagree." ' " (*Id.* at p. 377.)

A trial court may strike a prior strike conviction in cases brought under the Three Strikes law when dismissal is "in furtherance of justice." (§ 1385, subd. (a); *Romero*, *supra*, 13 Cal.4th at pp. 529–530.) The standards for striking a prior strike

7

are "stringent" and the circumstances must be " 'extraordinary . . . by which a career criminal can be deemed to fall outside the spirit of' " the law.  (*Carmony*, *supra*, 33 Cal.4th at p. 378.)  Factors to consider are "the nature of the charged and prior offenses and the defendant's 'background, character, and prospects.'  [Citation.]" (*Wheeler v. Appellate Division of Superior Court* (2024) 15 Cal.5th 1193, 1207.)  If these factors "manifestly support the striking of a prior conviction and no reasonable minds could differ[,] the failure to strike would constitute an abuse of discretion."  (*Carmony*, *supra*, at p. 378.)

Here, Adams fails to demonstrate that "no reasonable minds could differ" that he falls outside the spirit of the Three Strikes law. (*Carmony*, *supra*, 33 Cal.4th at p. 378.)  Accepting as true that Adams's childhood trauma and his young age at the time of the offense weigh in favor of striking the prior strike, the record also supports that Adams was a career criminal who aided and abetted a gang-related murder while still on parole for a prior offense.  And although Adams had already served eight years of his sentence at the time of the resentencing hearing, the record reflects he had engaged in only limited rehabilitative programming.  The record thus supports that the court " 'balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law,' " and we therefore cannot reverse " 'even if we might have ruled differently in the first instance.'  [Citation.]" (*Carmony*, *supra*, 33 Cal.4th at p. 378.)

Accordingly, we affirm.

## DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED</u>.

ROTHSCHILD, P. J.

We concur:

BENDIX, J.

WEINGART, J.